IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT HERSHGORDON** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO.  06-1234 |
| | : | |
| **PATHMARK STORES, INC.** | : | |

<u>**MEMORANDUM OPINION**</u>

**Savage, J.**                                                                                                      **July 23, 2007**

     In this action alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"),[1] and the Pennsylvania Human Relations Act ("PHRA"),[2] plaintiff Robert Hershgordon claims that his former employer, Pathmark Stores, Inc., did not allow him to return to work when he wanted after back surgery because it mistakenly believed he was still physically incapable of fulfilling the requirements of his job. He also contends that Pathmark's denial of his request for a reasonable accommodation was in retaliation for his requesting it.

     Moving for summary judgment, Pathmark contended that Hershgordon did not suffer an adverse employment action to support a retaliation claim and did not make out a *prima facie* case of discrimination because he was not disabled under the ADA. Hershgordon argued that Pathmark refused to reinstate him at his job when he requested because it "regarded" him as disabled within the meaning of the ADA.

     Summary judgment was granted in favor of Pathmark because its determination that Hershgordon's post-operative limitations prevented him from temporarily carrying out the requirements of his job is not enough to demonstrate that it regarded him as disabled

---

[1] 42 U.S.C. § 12101 *et seq.*

[2] 43 Pa. Stat. Ann. § 951 *et seq.*

within the meaning of the ADA.³  This memorandum opinion is intended to supplement the footnote order granting summary judgment and to set forth the undisputed material facts.

## Background

Hershgordon began his employment at Pathmark as a shift supervisor in April 2002. The following July, he injured his back at work.  Although he experienced pain at the time, he did not seek immediate medical treatment for his injuries.  Two months later, he was promoted to night store manager.

In August 2003, Hershgordon underwent back surgery and returned to work the following October.  In January 2004, he underwent a second surgery followed by an eight-month recuperation.  In September 2004, his doctor cleared him to return to work with certain restrictions.  Because Pathmark determined he could not yet perform the duties of his job as night store manager with those restrictions, it denied his request to return to his job at that time.  He continued to receive workers' compensation disability payments.

Pathmark's ADA Committee ("Committee"), composed of Pathmark employees familiar with positions throughout the store, was charged with evaluating requests for accommodations. Around November 2, 2004, at the suggestion of a member of the Committee, Hershgordon submitted a Request for Reasonable Accommodation Form ("RRAF") and a Physical Capabilities Evaluation Form ("PCEF") completed by his physician.

In his RRAF, Hershgordon requested that he be returned as the night store manager or promoted to a trainee for assistant store manager or general store manager.  Because

---

³ *Order, Hershgordon v. Pathmark Stores, Inc.*, C.A. No. 06-1234, (E.D. Pa. May 9, 2007) (Document No. 17).

the Committee felt that a promotion was not an appropriate accommodation,[4] it only evaluated the plaintiff's physical restrictions in the context of the night store manager position.[5] *Tr.* at 6. Considering the description of the night store manager position together with the doctor's assessment of the plaintiff's physical capabilities, the Committee concluded that Hershgordon was not yet able to return to his job. Consequently, on November 11, 2004, it denied his request. At the same time, the Committee informed him he could submit another request for accommodation when his condition improved.

About one week later, Hershgordon submitted a second RRAF and PCEF documenting slightly less severe restrictions. Noting that his condition appeared to have improved, the ADA Committee denied Hershgordon's second request because he still could not do the work required of the job as a result of the temporary walking, standing and lifting restrictions imposed by his physician.

On January 13, 2005, the Committee reopened Hershgordon's case after an independent medical examination. In a letter dated January 19, 2005, Pathmark informed Hershgordon that the Committee had reconsidered his possible return to his job as night store manager. In light of the medical examination findings, the Committee determined that there was no reasonable accommodation that would allow him to perform his job at that time. Once again, the Committee acknowledged that his condition appeared to be improving and informed him that he could submit another request for review when the

---

[4] Plaintiff agrees that the ADA does not require an employer seeking a reasonable accommodation to consider promotion. *See Transcript of Oral Argument* (Dec. 16, 2006), at 19-22 ("*Tr.*").

[5] The Committee did not consider whether Hershgordon's physical restrictions could have been accommodated in another position because night store manager was the only non-union position at his level. *Tr.* at 8-9. He would not have accepted a lower level job even if he was guaranteed the same salary. *Tr.* at 21-22.

limitations imposed by his physician became less restrictive.**⁶**  He continued to receive workers' compensation benefits.

## Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In examining the motion, the facts are viewed in the light most favorable to the nonmovant and all reasonable inferences drawn in the nonmovant's favor.  *Intervest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact.  Fed. R. Civ. P. 56(c).  Once the movant has done so, the opposing party cannot rest on the pleadings.  To defeat summary judgment, he must come forward with probative evidence establishing the *prima facie* elements of his claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which he bears the burden of production.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  An inference based upon speculation or conjecture does not create a material fact.  *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

---

⁶ Specifically, the January 19, 2005 letter stated "[i]f your restrictions become less stringent in the future you may submit another request to the Committee for review."  *Pl.'s Resp.*, Ex. J.

**Disability Discrimination**

The ADA prohibits covered employees from discriminating against a "qualified individual with a disability" because of his disability. 42 U.S.C. § 12112(a). Hershgordon claims Pathmark violated the ADA by refusing to allow him to return to work because it mistakenly believed that he was disabled.[7]

Hershgordon must first establish a *prima facie* case of disability discrimination under the ADA. In order to do so, he must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment decision because of his disability. *Gaul v. Lucent Techs. Inc.,* 134 F.3d 576, 580 (3d Cir. 1998). The central dispute between the parties is whether Hershgordon has adduced sufficient evidence to demonstrate that he falls within the ADA's definition of disabled.

To demonstrate that he had a disability within the meaning of the ADA, Hershgordon must show that he: (a) has a physical or mental impairment that substantially limits one or more major life activities; (b) has a record of such impairment; or (c) is regarded as having such an impairment. 42 U.S.C. § 12102(2). He does not claim actual disability or a record of an impairment. Rather, he argues that Pathmark "regarded" him as disabled.

The regulations define an individual who is "regarded as" having a disability as one who: (a) "[h]as a physical or mental impairment that does not substantially limit major life

---

[7] Relying on the same facts forming the basis for his ADA claims, the plaintiff also alleges violations of the Pennsylvania Human Relations Act ("PHRA"). The ADA and PHRA are coextensive and the analysis of the plaintiff's ADA claims applies equally to his PHRA cause of action. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

activities but is treated by a covered entity as constituting such limitation;" (b) "[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitude of others toward such impairment;" or, (c) has neither of these impairments but is treated by a covered entity as having a substantially limiting impairment. 29 C.F.R. § 1630.2(l) (2001).

Hershgordon contends that Pathmark mistakenly believed that a non-limiting physical impairment substantially limited his ability to work. After his second surgery, Hershgordon felt able to perform the duties of a night store manager. In fact, when he asked to return to work in September 2004, he felt as good, if not better, than he did when he returned to the night store manager position after his first surgery. He claims that although he was ready and able to return to his old job, Pathmark did not allow him to do so because it regarded him as disabled.

The information that Pathmark had regarding Hershgordon's condition and its response to that information is key to determining whether it regarded him as disabled. *Buskirk v. Apollo Metals*, 307 F.3d 160, 167 (3d Cir. 2002). The mere fact that it was aware that Hershgordon had an impairment is insufficient to demonstrate that it regarded him as disabled. *Kelly*, 94 F.3d at 109. The analysis focuses on the employer's "reactions and perceptions" and not the employee's actual disabilities. *Id*. at 108-09.

Here, Pathmark determined that there was no reasonable accommodation that would allow Hershgordon to return to work as a night store manager at that time. In making this determination, Pathmark's ADA Committee compared a description of the physical requirements of the night store manager position with Hershgordon's physical restrictions as prescribed by his doctor. *Kane Deposition* at 53-54 (Oct. 27, 2006) (*Pl.'s Resp.,* Ex. E)

("*Kane Dep.*"); *Tr.* at 16-17. The Committee determined that the temporary standing, walking and weight-lifting restrictions imposed by his physician prevented Hershgordon from doing his job at that time. Considering the amount of lifting the night store manager is required to do, the Committee concluded the only possible accommodation of Hershgordon's impairment would be to hire an additional person to assist him. *Kane Dep.* at 58. It determined this was not a reasonable accommodation. *Id.*

In general, an employer's perception that an employee cannot perform a wide range of jobs suffices to make out a "regarded as" claim. *Taylor v. Pathmark Stores, Inc.* 177 F.3d 180, 188 (3d Cir. 1999). Hershgordon has not shown that Pathmark considered him incapable of performing any jobs other than the night store manager one. On the contrary, he agrees that the Committee only considered him for one position, his job. *Tr.* at 14.

The undisputed facts demonstrate that Pathmark considered Hershgordon *temporarily* unable to do his job. It did not consider him as suffering from a permanent condition that prevented him from doing any job or a wide range of jobs. The perceived impairment's impact must be "permanent or long term" to be substantially limiting. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002) (citations omitted); *see also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 307 (3d Cir. 1999) (citations omitted). The ADA was not meant to provide a remedy for an injured employee who is not allowed temporarily to return to his job until his condition improves. Thus, Hershgordon has failed to establish the first element of a *prima facie* case - that he is disabled.

The dispute as framed by Hershgordon is not about his physical limitations. It is about the job requirements. Hershgordon does not question Pathmark's perception of the physical restrictions which were set by his own doctor. He challenges the job requirements

established by Pathmark. Instead of using Pathmark's description of the particular job that applies company-wide, Hershgordon wants to dictate his own requirements. In other words, he seeks to supplant his own job description for the employer's.

Hershgordon believes the Committee was wrong and that he was physically capable of returning to his old job as he, not Pathmark, defined it, in September 2004. He argues the Committee's erroneous assessment was based on an inaccurate description of the night store manager position. For example, according to the employer's written description, the night store manager must be able to lift twenty-five pounds frequently. Hershgordon insists a night store manager would never have to lift more than ten pounds. *Hershgordon Deposition* at 127-128 (Oct. 19, 2006) (*Pl.'s Resp.*, Ex. B) ("*Hershgordon Dep.*"). He contends that by relying on a flawed description of the night store manager's duties, the Committee mistakenly concluded that he could not perform the essential functions of that position. He argues that the Committee could have avoided this mistake if it had meaningfully engaged in the interactive process.

The interactive process is intended to determine if there is a reasonable accommodation that would allow a disabled employee to return to work while performing the essential functions of his job. 29 C.F.R. § 1630.2(o)(3). Hence, because the process is not triggered unless the employee is or is regarded as disabled, the adequacy of Pathmark's interactive process is not an issue because the plaintiff did not establish that he suffered from a disability within the meaning of the ADA.

Hershgordon agrees that before addressing whether Pathmark violated its duty to engage in the interactive process, he must show he was disabled. *Tr.* at 10. Yet, he has not shown that he falls within the scope of an ADA disability. Because the dynamics of

Pathmark's "interactive process" are only relevant if Hershgordon was a "qualified individual with a disability" and the record demonstrates that he was not, the adequacy of the process Pathmark had in place need not be examined.

Even assuming Pathmark was mistaken about the position's requirements and Hershgordon's inability to do the job, it is not liable under the ADA. Any mistakes the Committee may have made only factored into its assessment of Hershgordon's capacity for one job. An "employer who simply, and erroneously, believes that a person is incapable of performing a particular job will not be liable under the ADA." *Taylor*, 177 F.3d at 192. ADA liability "attaches only to a mistake that causes the employer to perceive the employee as disabled within the meaning of the ADA, [that is,] a mistake that leads the employer to think that the employee is substantially limited in a major life activity." *Id.* Because Pathmark never regarded Hershgordon as disabled, it is unnecessary to determine whether it proceeded under a false impression of what the night store manager job actually requires or whether dialogue with Hershgordon would have changed its understanding.

Hershgordon's proffered evidence fails to establish that Pathmark thought he was substantially limited in the major life activity of working. Despite Hershgordon's contention to the contrary, the dispute over whether he could perform his old job does not preclude summary judgment because an inability to perform one job is not a disability.

In sum, the undisputed facts demonstrate that Pathmark did not consider Hershgordon as suffering from a permanent condition that prevented him from doing a wide range of jobs. Instead, Pathmark considered him temporarily unable to do his job. Therefore, Pathmark did not regard Hershgordon as disabled within the meaning of the ADA.

**Retaliation**

An employer cannot retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA.[8] *Williams v. Philadelphia Housing Auth. Police Dep't.*, 380 F.3d 751, 758-59 (3d Cir. 2004). A plaintiff alleging unlawful retaliation need not be disabled within the meaning of the ADA. *Williams*, 380 F.3d at 759 n.2. Therefore, Hershgordon's failure to establish ADA disability is not fatal to his retaliation claim.

To establish a *prima facie* case of retaliation, Hershgordon must show: (1) he engaged in ADA-protected activity; (2) an adverse action by Pathmark either after or contemporaneous with his protected activity; and (3) a causal connection between the protected activity and the adverse action. *Fogelman*, 283 F.3d at 567-68.

The ADA's substantive provision seeks to prevent injury to individuals based on who they are. Its anti-retaliation provision seeks to prevent harm "based on what they do." *Johnson v. McGraw-Hill Co.*, 451 F.Supp.2d 681, 710 (W.D. Pa. 2006) (*citing Burlington Northern & Santa Fe Ry. Co. v. White*, __ U.S. __, 126 S.Ct. 2405, 2412 (2006)). "The dispositive question is whether a particular action would deter an objectively reasonable employee from seeking legal recourse." *Johnson*, 451 F.Supp.2d at 710.

Hershgordon's retaliation claim is nothing more than a restatement of his discrimination charge. The conduct he relies on to support his retaliation claim is the same conduct that he believes supports his allegations of discrimination. In some instances, an

---

[8] Because the anti-retaliation provisions of the ADA and PHRA are substantially similar, the analytical framework is identical. 42 U.S.C. § 12203(a); 43 Pa. Stat. Ann. § 955(d); *Fogelman v. Mercy Hosp., Inc.,* 283 F.3d 561, 567 (3d Cir. 2002).

action taken in retaliation for filing a request for reasonable accommodation might also support a discrimination claim. However, that is not the case here.

The circumstances of this case do not support a viable ADA retaliation claim. Requesting a reasonable accommodation is protected activity under the ADA. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 190-91 (3d Cir. 2003). Hershgordon argues he has established this element because he made such a request when he was ready to return to work in late 2004. Yet, he fails to acknowledge that he filed the request at the Committee's suggestion. In other words, he essentially argues that Pathmark retaliated against him for doing what it invited him to do.

The retaliation, in Hershgordon's mind, is the denial of his request for accommodation. The employer's denial cannot be viewed as an adverse employment action. An "adverse" action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 126 S.Ct. at 2415.[9] In essence, Hershgordon contends that the reason Pathmark denied his request is because he made it as Pathmark had instructed.

Though Pathmark denied the plaintiff's accommodation requests, it repeatedly acknowledged that his condition was improving and informed him of his right to renew his request later. Pathmark never had the opportunity to reevaluate Hershgordon. Although Pathmark left the door open for him to return to the night store manager position once his condition improved, Hershgordon chose to take a job with another employer in February 2005. He continued to accept disability benefits until February 28, 2005, benefits that are

---

[9] *Burlington Northern* involved a Title VII retaliation claim. ADA and Title VII Retaliation claims are analyzed under the same framework. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

payable only as long as the injured employee remains physically unable to return to work.

Nothing in the record suggests a reasonable worker under similar circumstances would be dissuaded from bringing a charge of discrimination. *Burlington Northern*, 126 S.Ct. at 2413. Indeed, allowing a reasoned denial of a request for accommodation to support a retaliation claim would result in a claim for unlawful retaliation every time a request for accommodation is denied.

## Conclusion

The plaintiff did not establish a *prima facie* case of ADA discrimination or retaliation. Accordingly, the defendant was entitled to summary judgment.